STATE of Tennessee, Appellee,

v.

**Meredith Lemont WILSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 21, 1984.

Permission to Appeal Denied by Supreme Court March 4, 1985.

William L. Shulman, William P. Purcell, III, Sr. Asst. Public Defenders, Nashville, for appellant.

W.J. Michael Cody, State Atty. Gen. & Reporter, Kevin Steiling, Asst. State Atty. Gen., John Zimmermann, Jack Seaman, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of burglary and grand larceny. In a bifurcated hearing he was found to be an habitual offender and sentenced to life imprisonment.

With regard to the base charges, the defendant says that evidence seized from his home should have been suppressed because of an illegal search, that an officer was allowed to give hearsay evidence which described a person seen selling items taken in the burglary, and that the manner of proving the known fingerprints of the defendant was prejudicial. With regard to his conviction and sentence as an habitual criminal, the defendant says that the district attorney general's practice of indicting all persons who are eligible for prosecution as an habitual offender is unconstitutional, that one of the prior offenses was erroneously submitted to the jury, that previous felony convictions were allowed in evidence without any showing the defendant had waived his constitutional rights when he pled guilty thereto, that the trial court erroneously instructed the jury that a previous conviction which was not an infamous crime or enumerated in the Habitual Offender Act could be so considered, that he was unduly restricted in showing mitigating evidence, and that the Tennessee Habitual Offender Act as applied to him constitutes cruel and unusual punishment.

The judgment is affirmed.

■ The defendant does not contest the sufficiency of the evidence, which shows that a house was broken into and several things were stolen therefrom. An overnight case stolen from the house was found on the premises where the defendant lived, and a fingerprint which matched the defendant's fingerprint was found on a bottle in the burgled residence. There is ample evidence to show the defendant guilty of the burglary and larceny, and also to show the defendant qualified as an habitual offender. T.R.A.P. 13(e).

The defendant bases his claim of an illegal search and seizure upon the discovery

of an overnight case, which was taken in the burglary, by officers executing an arrest warrant upon the defendant at his home. In the course of the arrest, an officer opened a chifforobe, and the case was found inside.

The burglary occurred on July 23, 1982, and after a month of investigation the officers determined there was probable cause to believe the defendant committed the crime. They obtained an arrest warrant charging the defendant with the offense and went to the defendant's residence to execute the warrant.

The evidence shows the defendant lived in a high crime area, and the officers approached the home cautiously to protect themselves from violence if this should occur. When they entered the home, they looked in various rooms and closets to ensure no one was hiding. The officers testified this was their standard procedure in high crime areas, especially when executing felony warrants.

The defendant, who lived with his sister and her boyfriend, was apprehended as he came from the bathroom. He was taken into the bedroom which he occupied, ordered to sit on the floor, and handcuffed.

Located in this room was a chifforobe, which the evidence shows was large enough to conceal a person. When one of the officers opened the chifforobe to see if anyone was inside, another officer observed an overnight case, which fit the description of a case taken in the burglary, on the floor of the chifforobe. The case was seized and identified at trial by the owner of the burgled premises as being the case taken from her home.

The officer in charge of the investigation testified he did not obtain a search warrant to look for the things stolen in the burglary because it was his experience that thieves generally dispose of stolen goods rather quickly and he had no reason to believe there would be anything left at the defendant's residence. Further, he testified that informants had told him that articles fitting the description of the things stolen had been sold.

Each of the officers testified that their action in looking into the closet and the chifforobe was for the purpose of protecting themselves from attack from anyone who might be lurking therein. There is no evidence that the officers opened or searched any drawer or other places too small to conceal a person. The items taken from the burgled premises included a pistol and several pieces of jewelry, which could have been concealed in such places.

The defendant bases his primary attack upon this seizure on the rule in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which holds that officers may search an area where a person arrested might reach to obtain a weapon to use upon the officers but not areas which are beyond this reach. The defendant insists that at the time the chifforobe was opened he was handcuffed and seated on the floor and posed no threat to the officers. He argues, therefore, that the opening of the chifforobe meets no reasonable exception to the prohibition on warrantless searches.

If the validity of the police action depended solely upon the *Chimel* rule, the defendant's argument would be persuasive. However, we are of the view that, under the facts in this case, the lawfulness of the officers' actions depends upon whether their search was justified as a protective sweep of the premises when the arrest was made.

In *United States v. Hatcher*, 680 F.2d 438 (6th Cir.1982), the Court recognized that protective searches are valid if there is at the time some basis for reasonable belief that there may be other persons on the premises who could pose a danger to the officers. The Court went on to say: "Courts should be cautious 'in limiting the ability of police officers to protect themselves as they carry out missions which routinely incorporate danger,' *United States v. Coates*, 495 F.2d 160, 165 (D.C. Cir.1974). Nonetheless, officers must be able to articulate justification for a warrantless search." *Id.* at 444.

■ As we have said, the arrest was made in a high crime area, the arrestee was a previously convicted felon, and more than one person occupied the premises, including one person who was not apparently present at the time and who was said, by the occupant, to be away. Further, the officers did not believe any of the stolen property was present on the property, and the manner of the looking only into areas where a person could be concealed and not in drawers, etc., where the stolen merchandise could have been concealed convinces us that the protective sweep was not used as a subterfuge to search for evidence of the defendant's guilt. The evidence was in the plain view of the officer, and its discovery was clearly inadvertent.

■ No Tennessee case has adopted the protective sweep rule set forth in *Hatcher.* However, we are persuaded that the rule is reasonable. When the facts and circumstances show the action of the officers conducting such a sweep is based upon reasonable, articulable facts relating to their safety, the protective sweep exception should be permitted, and we adopt it as the rule to be applied in such circumstances as are present in this case.

The defendant says the state was erroneously allowed, in direct examination, to present hearsay evidence through the investigating officer. The record more accurately reflects that the testimony complained of came out on redirect examination of the officer and was, in our view, a legitimate response to the defendant's cross-examination. It is our further view this testimony was not hearsay.

■ In the cross-examination of the officer, the defendant vigorously attempted to show that his purpose in going to the defendant's residence was to search for the stolen property. The officer insisted he did not do so, nor did he have any reason to believe the goods were located there.

On redirect, the officer testified that he believed the property was not on the premises because three people had told him a young black male was seen selling property which fit the description of the property taken shortly after the burglary. The officer on redirect did not further describe the person seen selling the property. On re-cross-examination, the defendant brought out the description of the person.

This testimony was relevant on the state of mind of the officer at the time he entered the defendant's house, an issue raised by the defendant, and as such was not offered to show that the defendant was selling the property. The witness made no attempt to assert the defendant sold the property or to assert the property was sold.

In short, this evidence was not offered to show the truth of the matters therein and thus is not hearsay evidence. *See Laird v. State,* 565 S.W.2d 38 (Tenn.Cr.App.1978).

Further, the defendant was not entitled to an instruction on the inference to be drawn from the absence of material witnesses, namely, those persons who had reported the selling of the stolen goods.

■ To justify a missing witness instruction, the evidence must show that one of the litigants has peculiarly available to him a witness with peculiar knowledge of the material facts at issue, and that the litigant having such witness failed to call the witness or give reasonable explanation for failure to do so. In such event the other party is entitled to have the court instruct the jury that they may infer that had the witness been called he would have given evidence detrimental to the party having such witness available.

■ There is nothing in the context of the evidence in this case which would require the court to give such instruction. The testimony about what these witnesses said to the officers was introduced on a collateral issue. Furthermore, the cross-examination by the defendant shows that these witnesses' testimony, had they been called, would have been adverse to the defendant because they would have described him as the person seen selling the stolen merchandise.

The defendant says that he was denied his constitutional right to confront the wit-

nesses by the manner in which the state showed an alleged fingerprint of the defendant, with which the fingerprint found at the scene of the crime was compared. He did not attack the expertise of the witness who made the comparison, when the witness was submitted as an expert. The jury weighed his credibility and apparently accepted his testimony.

The state offered an old fingerprint card which bore the name of the defendant and an identification number. The evidence shows that the police assign an identification number to a person who is arrested, and this number is used thereafter on any subsequent arrest of that person. The state further introduced a photo mug shot of the defendant which was assigned the same identification number as the one shown on the card.

The defendant relies upon *State v. Armes*, 607 S.W.2d 234 (Tenn.1980), and *State v. Henderson*, 554 S.W.2d 117 (Tenn. 1977), to assert a confrontation deprivation.

In *Armes* the Court held it was impermissible to allow a witness to give a recital of previous testimony of a witness who was unavailable at a subsequent trial. In *Henderson* the Court held it was error to introduce the results of a test conducted to determine the nature of a substance without having present the person who conducted the test. We think the situation before us is substantially different from these cases and that the issue turned on whether the fingerprint card was admissible in the nature of business records.

In *State v. Caldwell*, 671 S.W.2d 459 (Tenn.1984), our Supreme Court held that dental records made by a person who did not testify were admissible to identify the remains of a homicide victim and that the introduction of these records did not violate the confrontation clause. The Court distinguished this evidence from the laboratory report disallowed in *Henderson* on the basis that the dental records were not prepared specifically for the litigation at hand as was the toxicology report in *Henderson*, and that these records were admissible in the nature of business records.

■ In the case before us, the fingerprint card was not prepared for the specific litigation of this case. The evidence shows the manner in which records were kept, and in our view the introduction of this card did not deny the defendant the constitutional right of confrontation.

■ The photograph of the defendant which was introduced did not raise a confrontation question and we are unable to perceive how this photograph unduly prejudiced the defendant or denied him a fair trial.

This photograph did not bear a date or indicate the defendant was previously arrested. The fact that it fits the description of the person seen selling the stolen merchandise gives the defendant no right to relief because it was he, not the state, who introduced this description into the case.

The defendant says he was deprived of due process of law because the district attorney general seeks indictments on all persons who qualify under the Habitual Offender Act for prosecution and because the trial court would not allow him to show mitigating circumstances to the jury in the habitual offender phase of the prosecution.

■ The defendant relies upon two cases from the state of Washington, *State v. Pettitt*, 93 Wash.2d 288, 609 P.2d 1364 (1980), and *State v. Rinier*, 93 Wash.2d 309, 609 P.2d 1358 (1980), which held that prosecutorial authorities are required to exercise discretion in determining who is to be indicted as an habitual offender and that a policy of indicting all is unconstitutional. Whatever the state of Washington chooses to do on this is, of course, for them to determine. We do not find their rule persuasive and do not adopt their view.

■ On the complaint of not allowing the defendant to show mitigating circumstances to the jury, this Court has previously held that a defendant is not entitled to present such evidence because it is irrelevant. *State v. Duffel*, 665 S.W.2d 402 (Tenn.Cr.App.1983).

The defendant claims that a conviction for grand larceny should not have been introduced because the state did not affirmatively show that he had waived the right to be indicted by the grand jury on the charge to which he pled guilty. The records introduced show the following: a motion for waiver of jury, signed by appellant; a waiver of appeal, signed by appellant; a plea of guilty, signed by appellant; a criminal warrant, on the bottom of which is handwritten "Deft Waived Gr Jury;" and a minute entry, on which is printed in the margin, "Deft Waived Gr. Jury Action."

Neither at trial nor on appeal has the defendant asserted that he did not waive grand jury action on this charge. We are not dealing with a silent record on these matters.

The defendant has failed to show he is entitled to relief on this basis.

The defendant further claims a larceny conviction was inadmissible because the warrant did not allege sufficient basis for a grand larceny conviction. Again, the record shows the defendant, with counsel, entered a plea of guilty to grand larceny in that case and he did not at trial or here make any claim to the contrary. The record supplies any deficiency claimed and entitles the defendant to no relief.

The defendant's further claim that the warrant was not properly issued fails for the reasons above stated.

The defendant further claims the introduction of guilty pleas on previous felonies was erroneous because there was no affirmative showing of voluntary waiver of constitutional rights and that this ran afoul of the rule in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We do not have a *Boykin* situation in this case. In *Boykin* the record was silent as to waiver of constitutional rights at the guilty pleas. In the case before us this record as to waiver of constitutional rights is not silent.

In *Boykin* the Court would not indulge a presumption of waiver on a silent record. In the case before us, we will not indulge a presumption of non-waiver on a record which is not silent. We note again that the defendant does not assert he did not knowingly waive his rights in these cases.

The defendant says he is entitled to a new trial because the trial judge instructed the jury that they could consider a previous conviction that did not qualify as an infamous crime or as an enumerated felony under the Habitual Offender Act.

The record shows the defendant had more than enough other felonies to qualify him as an habitual offender. Any error in the instruction was therefore harmless error beyond a reasonable doubt.

The defendant lastly attacks his conviction for being an habitual offender as being cruel and unusual punishment under the holding in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In numerous cases, this Court has held that *Solem v. Helm* is not applicable to the Habitual Offender Act of this state because our statutes provide for parole eligibility, unlike the act under scrutiny in *Solem*. In reliance on *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) which was reaffirmed in *Solem*, we adhere to those holdings.

DWYER and O'BRIEN, JJ., concur.