IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JULY 1998 SESSION

FILED

September 16, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | No. 03C01-9709-CC-00385 |
| Appellee, | * | Blount County |
| vs. | * | Hon. D. Kelly Thomas, Jr., Judge |
| BRIAN W. GAINES, | * | (Delivery of Cocaine) |
| Appellant. | * | |

For Appellant:

Julie A. Martin
Attorney
P.O. Box 426
Knoxville, TN 37901-0426
(on appeal)

Stacey D. Nordquist
Assistant District Public Defender
419 High Street
Maryville, TN 37804
(at trial)

For Appellee:

John Knox Walkup
Attorney General & Reporter

Ellen H. Pollack
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

Philip Morton
Assistant District Attorney General
Blount County Courthouse
363 Court Street
Maryville, TN 37804

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Brian W. Gaines, was convicted of delivery of over 0.5 gram of cocaine, a Class B felony. The trial court sentenced the defendant, who qualified as a Range I offender, to nine years imprisonment. A fine of $100,000.00 was imposed.

In this appeal of right, the defendant presents the following issues for review:

(I) whether the evidence is sufficient;

(II) whether a photograph of the defendant was improperly admitted into evidence;

(III) whether the trial court erred by failing to provide a missing witness instruction; and

(IV) whether the trial court erred by misapplying an enhancement factor and by denying an alternative sentence.

We affirm the judgment of the trial court.

In the summer of 1996, Horace Cardin worked as an undercover drug buyer for Blount County Metro Narcotics. In the early afternoon of July 31, he met with law enforcement officials to prepare for a purchase of illegal drugs. Officers searched Cardin and provided him a transmitter and $100.00 in cash. They also searched his car and installed a video recorder on the dashboard. Cardin then drove to an area of Alcoa that is well-known for drug activity.

On South Fulton Street, Cardin encountered three black males standing in front of a house. The first man, later identified as co-defendant Walter Waters, waved to Cardin and asked what he wanted. Cardin replied, "I'd like to get a good hundred if I could," meaning that he wished to buy $100.00 worth of crack

2

cocaine. Waters returned to where the two other males were standing and the one identified at trial as the defendant went inside the house. The other, later identified as Mark Wimbley, approached the car and directed Cardin to park off the street. Within a few minutes, the defendant returned and handed Cardin four packets of crack cocaine in exchange for the cash.

Cardin, who testified that he got a "full view of [the defendant's] face," met with officers that afternoon, provided a description of the defendant and turned over the crack cocaine. He described the defendant as fairly tall and having hair about one-half inch long and a goatee. Cardin recalled that the defendant wore a Malcolm X t-shirt. He identified a single photograph of the defendant that afternoon and later positively identified him at trial. The video tape, which was played for the jury, included the chin of the individual who delivered the drugs, the top of his head, and his clothing but did not capture his full facial features.

Cardin admitted that he had prior felony convictions for aggravated assault and bail-jumping. He acknowledged that he received about $50.00 for each undercover drug buy and that, in return, he was expected to testify when the matter came to trial.

Ron Talbott, a Blount Metro Narcotics Officer, followed Cardin to within a block of Fulton Street. After the buy, he met with Cardin and collected four plastic bags containing crack cocaine. When Officer Talbott viewed the video, he immediately recognized Waters but did not recognize Wimbley. Officer Talbott thought the third individual looked familiar but could not recall his name. When Officer Talbott met with Cardin later that day to prepare for another buy, he showed Cardin photographs of Waters and the defendant. Cardin identified Waters as the

first individual to approach him and the defendant as the man who sold him the crack cocaine.

Lester Parker, another informant for Blount Metro Narcotics, has known the defendant and co-defendant Waters since grade school. At trial, Parker testified that, just after Cardin returned from the drug purchase, Officer Jim Harris asked him to view the videotape and make an identification. He recognized Waters as the first man to approach Cardin, the second man as Mark Wimbley, and the third as the defendant. Parker then drove to Fulton Street where he saw the defendant, standing by the same house and wearing the same clothing as depicted in the video. Parker testified that he based his identification on the head, chin, voice and clothing of the defendant. Officer Talbott, who was present while Parker viewed the video, testified that Parker recognized the three individuals: "[a]s soon as he walked in ... and looked at it ... he called them by name."

Carl Smith of the Tennessee Bureau of Investigation concluded that the four rocks weighed 0.32 gram, 0.21 gram, 0.23 gram and 0.26 gram, respectively, for a total weight of 1.0 gram. Each contained cocaine base.

The defendant presented no proof.

I

The defendant challenges the sufficiency of the evidence. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters

4

entrusted to the jury as trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

It is an offense to knowingly deliver a controlled substance. See Tenn. Code Ann. § 39-17-417(a)(2), (c)(2). A person acts knowingly "when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6). Cocaine is a schedule II controlled substance. Tenn. Code Ann. § 39-17-408.

In our view, the jury acted within its prerogative by determining that the defendant delivered cocaine to Cardin on South Fulton Street. Cardin testified he was certain that the defendant handed him the cocaine in exchange for his money. He stated that he had an opportunity to "get a view of his face." Parker also identified the defendant as the individual in the video tape who delivered the cocaine.

II

Next, the defendant contends that the trial court erred by admitting a photograph of the defendant. Defense counsel argued that the photo should have been excluded because the state did not comply with the rules of discovery. The defendant also contends that the trial court erred by failing to grant a mistrial when

5

Officer Talbott testified that he had "pulled a picture" of the defendant, because that language could lead the jury to believe the defendant had a prior criminal record.

The defendant's pretrial discovery motion is not in the record. Discovery is "always triggered by the defendant ...." Rule 16, Tenn. R. Crim. P., Advisory Commission Comments. Because there is no discovery motion or order in the record, this issue must be treated as waived. Tenn. R. App. P. 24(b); State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). Nevertheless, the defendant would not prevail on the merits because he has not demonstrated prejudice. When there has been a failure to produce discoverable material within the allotted time, the trial judge has the discretion to fashion an appropriate remedy, such as a continuance. Tenn. R. Crim. P. 16(d)(2). Whether the defendant has been prejudiced by the failure to disclose is always a significant factor. State v. Baker, 751 S.W.2d 154, 160 (Tenn. Crim. App. 1987). Exclusion of the evidence is a drastic remedy and should not be implemented unless there is no other reasonable alternative. See, e.g., State v. House, 743 S.W.2d 141, 147 (Tenn. 1987). Although the trial court admitted the photograph , it ordered the state to remove "Blount County Sheriff's Department" and the dates. In our view, the trial court provided a reasonable alternative. Without the designation and date, the photograph does not necessarily appear to be a mug shot from a prior arrest.

The admissibility of photographs is governed by Tenn. R. Evid. 403. See State v. Banks, 564 S.W.2d 947 (Tenn. 1978). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ...." Tenn. R. Evid. 403. The evidence must be relevant and its probative value must outweigh any prejudicial effect. Banks, 564 S.W.2d at 950-51. Whether to admit the photographs

6

is within the discretionary authority of the trial court and will not be reversed absent a clear showing of an abuse. State v. Dickerson, 885 S.W.2d 90, 92 (Tenn. Crim. App. 1993). That the photograph might be viewed as a mug shot is not sufficient to cause an inference of previous criminal activity. State v. Washington, 658 S.W.2d 144 (Tenn. Crim. App. 1983).

Finally, the decision whether to grant a mistrial is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such by the trial judge." Id. at 443. Here, the trial court clearly acted within its discretionary authority when it ruled that Officer Talbott's statement that he had "pulled a picture" was not an adequate basis for a mistrial. In the context of the entire trial, any error was clearly harmless given the totality of the evidence presented at trial. Tenn. R. App. P. 36(b).

III

Next, the defendant maintains that the trial court erred by refusing to instruct the jury that Mark Wimbley was a "missing witness." Wimbley, identified as the man who directed Cardin to park out of the street, was not charged with any offense and did not testify at trial. Officer Talbott stated that Wimbley had disappeared "prior to [the] arrest of several people involved in sales over there." He testified that the District Attorney had not made any arrangement to refrain from charging Wimbley in this case and that he did not think Wimbley was implicated in the drug transaction with Cardin. Officer Talbott was unaware that Wimbley had been named as a state witness on an indictment in an unrelated murder charge. There was no proof that Wimbley was a cooperating witness for the state.

7

To justify the missing witness instruction in this instance, the evidence, strictly construed, must indicate that this witness was peculiarly available to the state and had knowledge of the material facts at issue; if the state, under these circumstances, fails to call the witness or give a reasonable explanation for a failure to do so, the defendant is entitled to have the trial court give instructions that the jury may infer that had the witness been called, his testimony would have been detrimental to the state. State v. Wilson, 687 S.W.2d 720 (Tenn. Crim. App. 1984) (emphasis added). The witness must have knowledge of material facts, a relationship must exist between the witness and the state that would naturally incline him to favor the state, and the witness must have been available to the process of the court. Delk v. State, 590 S.W.2d 435 (Tenn. 1979); State v. Bigbee, 885 S.W.2d 797, 804 (Tenn. 1994).

Wimbley, an eyewitness to the drug transaction, obviously had knowledge of material facts. His testimony may or may not have supported the theory of the state as to the identity of the defendant. We conclude, however, that Wimbley's being on a possible witness list for the state on an unrelated charge is not enough, standing alone, to establish a natural inclination on his part to favor the state. Officer Talbott testified that there was no "deal" with Wimbley and the reason Wimbley was not charged was because he appeared to be innocent of wrongdoing. Wimbley did not approach Cardin to inquire what he needed, nor did he participate in the actual transaction. Officer Talbott explained that Wimbley had disappeared and could not be located. Wimbley was not, in our view, peculiarly available to the state and simultaneously unavailable to the defense. The defendant's bare assertion that "someone for the State knew where [Wimbley] was ...." does not meet the test.

8

IV

The defendant contends that the trial court misapplied an enhancement factor and incorrectly presumed that the defendant was not eligible for an alternative sentence. We find the enhanced sentence was warranted and affirm denial of an alternative sentence.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

At the time of this offense, the presumptive sentence was the minimum in the range if there were no enhancement and mitigating factors. Tenn.

9

Code Ann. § 40-35-210(c). Should the trial court find mitigating and enhancement factors, it must start at the minimum sentence in the range and enhance the sentence based upon any applicable enhancement factors, and then reduce the sentence based upon any appropriate mitigating factors. Tenn. Code Ann. § 40-35-210(e). The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the 1989 Act. See Ashby, 823 S.W.2d at 169. The trial court should, however, make specific findings on the record which indicate its application of the sentencing principles. Tenn. Code Ann. §§ 40-35-209 and -210.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). Even in cases where the defendant meets the minimum requirements of the Community Corrections Act of 1985, the defendant is not necessarily entitled to be sentenced under the Act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App.1987). The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not

10

involved;

> (5)  Persons who do not demonstrate a present or past pattern of behavior indicating violence;

> (6)  Persons who do not demonstrate a pattern of committing violent offenses;  and

> (7)  Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a) (emphasis added).

The defendant, forty-one years old, is married, and has three children and two step-children.  He graduated from Alcoa High School in 1974 and attended Pellissippi State Community College for six months in 1994.  From 1979 until 1993, when he was laid off, the defendant worked for the Aluminum Company of America as a tacman.  He obtained employment as a tree trimmer in 1996 but was terminated when arrested and charged in this case.

While he maintains that he enjoys good physical and mental health, he has suffered from depression since his arrest and incarceration.  He also has a long history of drug abuse.  He was hospitalized in 1982 and 1989 for treatment of drug addiction.  He admitted to using cocaine regularly since 1979.  He last used cocaine several days prior to his arrest.

At the age of twenty, the defendant was convicted of selling marijuana and received a one-year suspended sentence.  Four years later, he was arrested for assault and battery but these charges were dismissed.  In 1983, he was arrested for driving while intoxicated and possession of marijuana.  While the charge for driving while intoxicated was dismissed, he was convicted of possession of marijuana.

At the sentencing hearing, the defendant maintained his innocence

11

and asked for a sentence involving drug treatment. The trial court imposed a Range I sentence of nine-years. The defendant was fined $100,000.00. The trial court found that the defendant had a history of criminal behavior and prior criminal convictions. Tenn. Code Ann. § 40-35-114(1). The trial court also concluded that the defendant was a leader in the commission of the offense, stating the he was "evidently in charge ...." Tenn. Code Ann. § 40-35-114 (2). For the factor to apply, one does not have to be the leader in the offense, but merely a leader in the commission of the offense. See State v. Angele Franklin, No. 03C01-9402-CR-00061 (Tenn. Crim. App., at Knoxville, Sept. 27, 1995), app. denied, (Tenn. Mar. 4, 1996). Although there is little evidence in the record to support this factor, the enhanced sentence is warranted based on the defendant's history of criminal convictions and behavior. In consequence, we affirm the length of the sentence.

In our view, the trial court erroneously concluded that the defendant was ineligible for alternative sentencing. Even with a nine-year sentence, the defendant meets the threshold qualifications for community corrections. State v. Reginald Hannum, No. 03C01-9710-CC-00480 (Tenn. Crim. App., at Knoxville, June 26 1998). Convicted of a Class B felony, the defendant, however, is not presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6). He has a handful of prior convictions and has admitted to almost twenty years of regular cocaine use. See Tenn. Code Ann. § 40-35-103(1)(A). Although he has been through two in-patient drug treatment programs, he has been unable to manage the addiction. In this regard, he does not appear to be a favorable candidate for rehabilitation. This leads us to believe that the there is little likelihood of success in the community corrections program. Tenn. Code Ann. § 40-35-103(5). On the other hand, he has a consistent work history, including eighteen years of service with a single employer, and he expresses a desire to obtain further

12

treatment for his drug addiction. While these considerations weigh in favor of an alternative sentence, the seriousness of the offense and need for deterrence suggest that he serve his sentence with the Department of Correction. Tenn. Code Ann. § 40-35-103(1)(B).

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
Joseph M. Tipton, Judge


_____
David H. Welles, Judge