## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT NASHVILLE

### APRIL 1999 SESSION



FILED

June 30, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9806-CC-00275 |
| | ) | |
| vs. | ) | Marion County |
| | ) | |
| CALVIN D. HAVNER, | ) | Hon. Thomas A. Graham, Judge |
| | ) | |
| Appellant. | ) | (Theft) |

FOR THE APPELLANT:

**PAUL D. CROSS**
1020 West Main Street
P.O. Box 99
Monteagle, TN 37356

FOR THE APPELLEE:

**PAUL G. SUMMERS**
Attorney General & Reporter

**CLINTON J. MORGAN**
Assistant Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN 37243-0493

**JAMES MICHAEL TAYLOR**
District Attorney General
265 Third Avenue, Suite 300
Dayton, TN 37321

**STEVEN H. STRAIN**
Assistant District Attorney
P.O. Box 130
Jasper, TN 37347-0130

OPINION FILED:_____

AFFIRMED

**JAMES CURWOOD WITT, JR., JUDGE**

### OPINION

The defendant, Calvin D. Havner, appeals from his conviction for theft of property over $1000 but less than $10,000,[1] a Class D felony, in the Marion County Circuit Court. The trial court imposed a sentence of two years and six months with the defendant serving eleven months and 29 days in the local jail subject to work release privileges and the remainder on probation. In this direct appeal, the defendant raises two issues: (1) whether the trial court erred in giving a "missing witness" jury instruction and in prohibiting the defendant from testifying that he was afraid of the missing witness, and (2) whether the trial court properly sentenced the defendant by not granting straight probation or community corrections. After a review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

The state presented the following proof at trial. Robert Bynum testified that he owns and operates a golf course in Alabama. On October 25, 1996, he discovered that several items had been stolen from his golf course, including two four wheelers. Mr. Bynum followed the visible tracks leading away from the golf course. These tracks led through woods and fields to the defendant's father's house, approximately two miles behind the golf course in Marion County, Tennessee. The four wheeler was a 1991 model he had purchased for $5500 to $5600. He uses the four wheelers to travel across the golf course carrying tools because golf carts are too slow.

Officer Ken Tuders of the Marion County Sheriff's Department testified that he encountered the defendant near his residence a few days after the four wheelers were stolen. The officer asked the defendant if he had a four wheeler and if he could examine it. The defendant rode in the patrol car with the officer to the

---

[1] Tenn. Code Ann. §§ 39-14-103, -105(3) (1997).

2

defendant's home. When they arrived, the four wheeler was in the defendant's front yard and the defendant possessed the key. The officer checked the vehicle identification number and was informed that a four wheeler with that number had been stolen from Jackson County, Alabama a few days earlier. The defendant told the officer that he bought the four wheeler from Mike through the Swap and Shop radio program. The defendant's wife told the officer it was Michael Knight who sold them the four wheeler. The defendant never showed the officer a bill of sale or title to the four wheeler.

The defense presented the following proof at trial. The defendant testified that in 1996 he lived in Sweetens Cove on Gourdneck Road and worked for High Standard Pad. Before purchasing a home there, he lived behind his parents' home. In late 1995 there was a fire at his parents' home in which the defendant and his family lost everything. He was insured and he received money to replace his family's personal property. His children from a previous marriage wanted a four wheeler to be purchased with some of the insurance proceeds. On Wednesday or Thursday night prior to his arrest, the defendant contacted the Swap and Shop radio program where items can be purchased and sold. He received a phone call from an individual interested in selling the defendant a four wheeler. The defendant purchased a four wheeler for $1200 from a man he later discovered was Mike Godsby. Mr. Godsby gave the defendant a bill of sale for the four wheeler which the defendant lost or misplaced.

The defendant and his family rode the four wheeler for three or four days all around their home. The defendant's testimony regarding Officer Tuders' involvement was substantially similar to Officer Tuders' testimony. However, the defendant testified that he was locked in the back seat of the patrol car as the officer checked the vehicle identification number, and he was unable to retrieve the

bill of sale because the officer would not allow him to leave the patrol car. The defendant did not know the four wheeler was stolen at the time of purchase. He told the officer that Mike sold him the four wheeler, but he did not know Mike's last name at the time of arrest. Only recently did he discover that the person was Mike Godsby. The defendant's wife's testimony was essentially the same as the defendant's testimony. She had seen a bill of sale for the four wheeler in their home. She testified that she did not know it was stolen at the time of purchase.

Grace Sullivan testified that she lived near the defendant and saw him riding a four wheeler at least two times. Jeff Havner, the defendant's uncle, testified that the defendant came to his house to see if he wanted to purchase the four wheeler or trade it for a smaller four wheeler. Ernest King testified that he had seen a four wheeler in the back of the defendant's truck on two occasions a few days before the arrest. The defendant did not try to conceal the four wheeler while it was in the back of his truck.

On this evidence, the jury found the defendant guilty of one count of theft of property over $1000 but less than $10,000.

## I.

First, the defendant challenges the trial court's jury instruction as to a missing witness and the trial court's prohibiting the defendant from testifying that he was afraid of the missing witness, Mike Godsby. For a missing witness jury instruction to be proper, three requirements must be met. The evidence must show "[1] the witness had knowledge of material facts, [2] that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and [3] that the missing witness was available to the process of the Court for the trial." Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979). These

4

requirements "are to be strictly construed, particularly when the rights of a criminal defendant may be affected." State v. Francis, 669 S.W.2d 85, 89 (Tenn. 1984). Our supreme court instructed trial judges to "make an informed decision as to the absent witness' availability to the process of the court, the witness' capability to elucidate the transaction at issue, and whether a relationship exists between the witness and the party that would naturally incline the witness to favor the party." Id. The purpose of the missing witness jury instruction is to allow a permissive inference that the testimony of the missing witness would have been unfavorable to the party failing to call the material witness. Id. at 88 (citing Graves v. United States, 150 U.S. 118, 121, 14 S. Ct. 40, 41 (1893)).

The first requirement of Delk is satisfied in this case. The missing witness was Mike Godsby, who allegedly sold the four wheeler to the defendant. The sale of the four wheeler is a material fact in determining whether the defendant committed theft. Mr. Godsby possesses knowledge material to this case regarding whether he sold the four wheeler to the defendant.

The second and third requirements of Delk are more difficult to ascertain from the record. Regarding the third requirement that the witness be available to the process of the court, there is no information in the record about the witness' location. We cannot assume that the witness would have been available to the process of the trial court. The second requirement, that a relationship exists between the witness and the party which would naturally incline the witness to favor the party, is not satisfied by the facts of this case. The relationship between the defendant and the witness is buyer and seller. From this relationship we cannot assume that the witness would naturally be inclined to favor the defendant. In fact, it is more likely that the witness would deny selling stolen property to protect himself from prosecution. See State v. Larry G. Hart, No. 02C01-9406-CC-00111, slip op.

5

at 8 (Tenn. Crim. App., Jackson, June 28, 1995). The trial court made no findings regarding these two requirements. Accordingly, we find that the trial court erred in giving the missing witness jury instruction.

Although the trial court erred in instructing the jury regarding the missing witness, we apply a harmless error analysis to the improper instruction. Harmless error is an error which does not "affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). The missing witness jury instruction allows a permissive inference to be drawn, from the failure of a party to subpoena a missing witness or give reasonable explanation for failure to do so, that the testimony would have been unfavorable to that party. See State v. Wilson, 687 S.W.2d 720, 724 (Tenn. Crim. App. 1984).

From all the evidence adduced at trial, proof of the defendant's guilt was substantial. The victim followed four wheeler tracks to the defendant's father's home. The defendant admitted that the four wheeler was in his front yard and he possessed the key. The defendant could not produce any evidence that he purchased the four wheeler, such as a bill of sale or title to the four wheeler. From this evidence, the jury could logically infer that the defendant committed theft. Accordingly, we find the missing witness jury instruction was harmless error.

The defendant challenges the trial court's exclusion of his testimony that he was afraid of the missing witness. Apparently, the defendant was attempting to explain the reason he had not subpoenaed the missing witness. A review of the transcript of the trial reveals that the defendant testified he was "afraid of what [the missing witness] might do to [his] family" because he had "numerous things happen to [his] wife's car and [his] truck." The state objected to this testimony as irrelevant, and the court sustained the objection. The defendant's assertion that this testimony

6

should have been allowed is correct, but from the transcript it seems that the testimony was essentially allowed. The testimony was never stricken from the record, and no jury instruction to disregard the statement was given or requested. This testimony was relevant to the second prong of Delk regarding the relationship between the missing witness and the defendant and whether the missing witness would have been favorable to the defendant. By sustaining the objection, the trial court did not consider the impact of the defendant's testimony on whether the missing witness jury instruction was appropriate. The trial court erred in not considering this testimony; however, we find this was harmless error. As stated previously, proof of the defendant's guilt was substantial without the permissive inference allowed by the missing witness jury instruction.

## II.

Next, the defendant challenges the sentence imposed by the trial court. The defendant contends that the court erred in finding enhancement factors and denying mitigating factors, in weighing the factors, and in denying probation or community corrections.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. Id. If appellate review reflects the trial court properly considered all relevant factors and

its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §40-35-210(a), (b) (1997); Tenn. Code Ann. §40-35-103(5) (1997); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. §40-35-102(6) (1997). Thus, a defendant who meets the criteria of section 40-35-102(6) is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, offenders who meet the criteria are not automatically entitled to such relief because sentencing issues should be determined by the facts and circumstances presented in each case. State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

In determining whether to grant probation, the judge must consider the nature and circumstances of the offense, the defendant's criminal record, his

8

background and social history, his present condition, including his physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. See State v. Bonestel, 871 S.W.2d 163, 169 (Tenn. Crim. App. 1993); Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974). The defendant bears the burden of establishing suitability for probation, even when the defendant is presumed to be eligible for probation. See Tenn. Code Ann. §§ 40-35-303(a)-(b) (1997); State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995).

The record of the case at bar reflects that the trial court thoroughly considered the relevant sentencing principles. Accordingly, its determination is entitled to the presumption of correctness.

In determining the sentence, the trial court found that the enhancement factor of a prior criminal record applied because the defendant had a prior theft conviction. See Tenn. Code Ann. § 40-35-114(1) (1997). Contrary to the defendant's assertion that the trial court denied the mitigating factors the defendant presented, the trial court found two applicable mitigating factors. The trial court found the defendant's conduct neither caused nor threatened serious bodily injury and the defendant assisted the authorities in locating or recovering property. See Tenn. Code Ann. § 40-35-113(1), (10) (1997). In weighing these factors, the trial court found the prior theft conviction far outweighed the mitigating factors. The trial court found confinement was necessary to avoid depreciating the seriousness of the offense and because measures less restrictive have frequently or recently been applied unsuccessfully to this defendant. See Tenn. Code Ann. § 40-35-103(1)(B), (C) (1997). Therefore, the trial court enhanced the defendant's sentence by six months and ordered split confinement.

9

The trial court's findings are supported by the record. Although the defendant was presumed to be eligible for community corrections, there was sufficient evidence to rebut this presumption. Additionally, the defendant has not carried the burden of establishing his suitability for total probation. The trial court found the defendant was not truthful during the sentencing hearing about his prior theft conviction. A lack of truthfulness is an indication of a defendant's potential for rehabilitation. State v. Neeley, 678 S.W.2d 48, 49 (Tenn. 1984); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); State v. Dowdy, 894 S.W.2d 301, 305-06 (Tenn. Crim. App. 1994). The trial judge is in the best position to assess a defendant's credibility and potential for rehabilitation. A defendant's potential for rehabilitation "should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5) (1997). The trial court properly sentenced the defendant to a period of confinement.

In consideration of the foregoing and the record as a whole, we affirm the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:


_____
JOHN H. PEAY, JUDGE

_____
DAVID H. WELLES, JUDGE