IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2001

## STATE OF TENNESSEE v. TAVIS SHIELDS

**Direct Appeal from the Circuit Court for Madison County**
**No. 98-494     Roy B. Morgan, Jr., Judge**

---

**No. W2000-01404-CCA-R3-CD  - Filed July 6, 2001**

---

The sole issue in this appeal is whether the trial court erred when it admitted into evidence a booking record purportedly containing the defendant's fingerprints. The defendant contends that the booking record is hearsay and not admissible under the business records exception to the hearsay rule. After a thorough review of the record, we conclude that the introduction of the defendant's booking record into evidence was proper as a business record. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

Victor L. Ivy, Jackson, Tennessee, for the appellant, Tavis Shields.

Paul G. Summers, Attorney General & Reporter; Peter M. Coughlan, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On June 1, 1998, the defendant, Tavis Shields, was indicted on one count of aggravated robbery, a Class B felony. On September 20, 1999, a Madison County jury found the defendant guilty of the indicted offense. On December 14, 1999, the defendant was sentenced to a twelve-year sentence as a Range I offender in the Tennessee Department of Correction and fined $5000. Following the defendant's conviction and sentencing, the defendant filed a motion for judgment of acquittal or, in the alternative, a new trial. The motion was denied on May 9, 2000. On May 17, 2000, the defendant filed a notice of appeal and this appeal followed.

**Facts**

At approximately 12:30 a.m. on July 2, 1997, two black men entered a Jackson Day's Inn motel and committed a robbery. The robbery was captured on video tape, which showed the men holding guns, wearing sunglasses, and the defendant wearing a baseball cap, a bandanna around the lower part of his face, and a New York Yankees jersey. The video tape also showed the men jumping over the front counter and forcing the employees to open the cash register. After the cash register was opened, the men grabbed the money from the cash drawer and fled.

Following the robbery, an investigation was conducted by the Jackson Police Department. During the investigation, fingerprints were taken from the area of the counter where the video tape showed that the defendant placed his hand when he jumped over the counter. The video tape clearly showed that the defendant was not wearing gloves. After the defendant was identified from the video tape as one of the two persons who committed the robbery, he was arrested and indicted on one count of aggravated robbery.

The defendant's case was ultimately transferred to adult court from juvenile court where the defendant was tried alongside his accomplice. Several pieces of evidence were introduced at trial to prove the guilt of the defendant, including a booking record on file with the Jackson Police Department under the name Tavis Manwell Shields and bearing the number 023269. When the booking record containing the defendant's name was introduced into evidence, the defendant's attorney objected to its introduction claiming that it was hearsay. The trial court, however, allowed the introduction of the booking record as a business record exception to the hearsay rule. Based on the evidence introduced at trial, both the defendant and his accomplice were convicted of aggravated robbery. This appeal followed.

**Analysis**

The defendant contends that the introduction of the booking record was improper and did not fall within the parameters of a business record under Tennessee Rule of Evidence 803 (6). The defendant contends that the booking record was a matter "observed by police officers and other law enforcement personnel" and should have been excluded under Tennessee Rule of Evidence 803 (8). We do not agree.

A. Business Record Exception to the Hearsay Rule

Tennessee Rule of Evidence 803(6) sets forth that a "record ... made ... from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity to make the ... record" shall be an exception to the hearsay rule. The rule also sets forth that "testimony of the custodian or other qualified witness" shall be the method of establishing the trustworthiness of such record in light of the requirements of the rule. In past cases, this court has concluded that fingerprint cards are admissible as evidence so long as "'not prepared for the specific litigation' of the case and that the evidence showed 'the

manner in which records were kept.'" State v. Wilson, 687 S.W.2d 720, 725 (Tenn. Crim. App. 1984); State v. Bogle, C.C.A. No. 86-258-III, 1987 WL 15193, *6 (Tenn. Crim. App., filed August 7, 1987, at Nashville).

B. Analysis

Prior to launching into our analysis we pause to note that the trial court questioned the purpose for which the evidence was offered. Clearly, the State wished to establish the actual prints of the defendant so as to link the defendant to the latent prints found at the crime scene. This link is where the controversy in the instant case arises, for the link between the prints and the defendant's name, Tavis Manwell Shields, effectively serves as an out of court statement offered to prove the truth of the matter asserted - the statement being "I am Tavis Manwell Shields and these are my prints." That statement is offered to prove that the prints contained on the booking card belonged to the defendant and is hearsay.

Having clarified that the booking record sought to be introduced into evidence in the instant case is hearsay, we focus on the crux of the issue set forth herein - whether the booking card is more properly classified as a public record under Tennessee Rule of Evidence 803(8) or a business record under Tennessee Rule of Evidence 803(6). We are able to understand how the defendant might believe that the booking record in question falls within parameters of Tennessee Rule of Evidence 803(8) as a public record or report compiled by a public agency. However, the same rule sets forth that the breadth of this rule is limited to reports or public records that were produced with respect to "matters observed pursuant to a duty imposed by law as to which matters there was a duty to report." The booking record in question is not a matter observed, but rather a record compiled at the time of booking from information gathered at the time of booking. Further, the Jackson Police Department was in the regular practice of compiling and keeping booking records when booking a suspect. Thus, it is clear that the booking record in question more closely fits into the category of a business record under Tennessee Rule of Evidence 803 (6).

Having established that the booking record in question is a business record within the language of Tennessee Rule of Evidence 803 (6), we turn our attention to whether the mandates of Tennessee Rule of Evidence 803 (6) have been complied with such that this piece of evidence has been properly entered under the business record exception to the hearsay rule. Tennessee Rule of Evidence 803 (6) requires that the business record be made from information transmitted by a person with knowledge and that the person have a business duty to record or transmit such information accurately. The rule further states that both of these requirements may be shown by the testimony of a qualified witness.

In the instant case, the State sought to introduce the booking record through a Detention Specialist at the Jackson Police Department. The Detention Specialist testified that her regular duties consisted of booking suspects at the Jackson Police Department. As such, the Detention Specialist was a qualified witness on the matter of booking procedures and was competent to testify about the booking records and procedures at the Jackson Police Department.

After the Detention Specialist was qualified to testify about the booking records at Jackson Police Department, she also testified about the procedures followed while booking a suspect. The Detention Specialist testified that, as part of her duties, she placed ink on the hands and fingers of suspects being booked at the Jackson Police Department and signed each booking record in order to ensure a record of who booked a particular suspect. Looking at the booking record in question in the instant case, the Detention Specialist was able to identify her signature on the booking card, which she testified indicated that she was the officer who booked the suspect set forth therein. Because the Detention Specialist was able to identify the record as one she prepared, she was able to testify about its preparation. The Detention Specialist testified that as matter of common procedure she asked the suspect his name, had him write his name on the booking card, personally placed the prints (thumb, fingers and hand) on the booking card after they had been inked, and that the name of the person booked in the instant case was Tavis Manwell Shields. The Detention Specialist also testified, however, that because of the hundreds of suspects that she processes, or books, she could not recall the defendant as being the person booked or printed, nor could she be certain that the person who she booked under the name of Tavis Manwell Shields was in fact the defendant.

Prior to concluding our analysis in this case, we pause to acknowledge one very strong link between the fingerprint card in question in the instant case and the defendant. At the time the defendant was booked, he also had his picture taken for the booking record. In the booking record the defendant is holding a placard with the booking number 023269 and the date of February 4, 1998 on it. No question as to the authenticity of this photograph was raised at trial, and as such, it is taken to be a true and correct photograph of the defendant. The same booking number, 023269, and the same date, February 4, 1998, also appear n the fingerprint booking cards in question in the instant case. Such links between the uncontroverted photograph of the defendant and the purported booking cards of the defendant are exceptionally strong.

Finally, the booking record was compiled in the regular course of police business, and the officer had a duty to accurately record the information she was given while booking the defendant. The requirements of Tennessee Rule of Evidence 803 (6) were met and the introduction of the defendant's booking record was fully within this exception to the hearsay rule. As such, the weight of the credibility of the evidence became a factor for the jury to weigh, State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995), and we will not disturb the jury's findings.

**CONCLUSION**

After a thorough examination of the record, this court concludes that the trial court was correct in finding that, pursuant to Tennessee Rule of Evidence 803(6), the defendant's booking record was a business record. Thus, the trial court was correct in allowing the defendant's booking record to be introduced into evidence as an exception to the hearsay rule.

_____
JOHN EVERETT WILLIAMS, JUDGE