**STATE of Tennessee, Appellee,**

v.

**Bobby Vincent BLACKMON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

July 19, 1985.

Permission to Appeal Denied by Supreme Court Sept. 30, 1985.

Richard L. Kaiser, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen. of Tenn., Kevin Steiling, Asst. Atty. Gen. of Tenn., Thomas H. Shriver, Dist. Atty. Gen., Ronald Miller, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Bobby Vincent Blackmon, was convicted of escape and received a penitentiary sentence of not less than two (2) years nor more than five (5) years.

In this appeal, we are confronted with three (3) issues, i.e., (1) whether the defendant was unconstitutionally denied a speedy trial; (2) whether certain evidence was erroneously admitted; and (3) whether the prosecuting attorney made improper comments in his arguments to the jury. We find no reversible error.

We first consider the defendant's complaint that the trial court erred in overruling his motion to dismiss the indictment on the ground that he was denied a speedy trial.

The record shows that the defendant was convicted on November 30, 1970, in Shelby County of felony-murder and armed robbery. He received a life sentence on the murder conviction and a concurrent ten (10) year sentence on the armed robbery conviction. He was received at the State penitentiary on January 18, 1971. It appears that he escaped on November 29, 1973. The record further shows that he was arrested in California for some offense in 1980, and that he remained incarcerated there until April, 1983. At that time, after unsuccessfully resisting extradition, he was returned to Tennessee. He was indicted for escape on November 4, 1983, and was tried and convicted of escape on July 23, 1984.

At the hearing on the defendant's motion to dismiss the indictment, the defendant testified that he was incarcerated in California on September 3, 1980. He remained incarcerated in California for two (2) years and eight (8) months before being returned to Tennessee. He said he requested on three (3) occasions to be brought back to Tennessee for trial on his escape charge. He stated that he made these requests through his prison counselors while imprisoned in California. However, there is nothing in the record to show that there was any compliance with the formal requirements of the Interstate Compact on Detainers Act. T.C.A. § 40–31–101, et seq.

In any event, the defendant in his brief does not argue any violation of that Act; rather, he bases his complaint here on the grounds that he was denied a speedy trial in violation of both the Federal and State Constitutions. U.S. CONST. amend. VI; TENN. CONST. art. I, § 9.

The defendant's speedy trial rights, under both the Federal and State Constitutions, must be evaluated by applying the four-part balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See State v. Baker*, 614 S.W.2d 352 (Tenn.1981); *State v. Bishop*, 493 S.W.2d 81 (Tenn.1973). Those factors include: (1) the length of delay; (2) the reason of the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice accrued to the defendant as a result of the delay. No single factor is determinative in all cases, but the most crucial inquiry is whether the delay has prejudiced the defendant. *Tillery v. State*, 565 S.W.2d 509 (Tenn.Cr.App. 1978).

According to the prison records—which we will discuss further in connection with the defendant's second issue—the defendant escaped from the custody of the Tennessee penal authorities on November 29,

1973, and remained out of custody until April 21, 1983. Therefore, this delay must be attributed to the defendant and not to the State. After his incarceration in California in 1980, he was confined there for two (2) years and eight (8) months, serving a sentence for some California violation. The record indicates that at some point during his California incarceration, the Tennessee authorities caused a detainer to be placed on the defendant for him to be held for ultimate return to Tennessee to complete the sentences he was serving when he escaped. A detainer may also have been placed regarding his escape charge, but the record is less clear on that point.

At any rate, the defendant was returned to Tennessee on April 21, 1983, to resume serving his sentences. Thereafter, as previously stated, he was indicated for escape on November 4, 1983, and was tried on July 23, 1984.

■ Thus, under the above circumstances, the delay from the defendant's escape until Tennessee reacquired jurisdiction over him was brought about by the defendant's own actions, and thus this delay may not be said to have occurred in such a manner as to be violative of the defendant's Fifth Amendment due process rights. *See State v. Baker, supra.*

Also, we point out that no Sixth Amendment speedy trial problem arises until after formal accusation against an accused, either by arrest or indictment. *See State v. Baker, supra.*

Further, as previously stated, after Tennessee reacquired jurisdiction over the defendant, he was then in custody for the serving of his sentences from which he had escaped and not for the escape charge.

■ Thus, we conclude that the length of delay to be considered in this case involves approximately nine (9) months, the time that elapsed from his indictment to trial.

A nine (9) month delay does not, in and of itself, show that a speedy trial was denied. In *State v. Bishop, supra,* the Court held that a delay of a little over two

(2) years was not per se extreme and was not such a delay that prejudice would be presumed from that factor alone. *Id.,* 493 S.W.2d at 84. *See also, Cunningham v. State,* 565 S.W.2d 890, 892 (Tenn.Cr.App. 1977) (23 month delay); *Farr v. State,* 506 S.W.2d 811, 813–14 (Tenn.Cr.App.1974) (13 month delay).

The length of delay factor is a triggering mechanism for inquiry into the other factors. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo, supra,* 92 S.Ct. at 2192.

Thus, under the facts and circumstances present in this case, we find the delay was not presumptively prejudicial, and therefore is not sufficient to trigger the defendant's speedy trial claim.

At any rate, we will comment on the other factors.

The record does not show any specific reason for the nine (9) month delay from indictment to trial. However, we note that the defendant filed several pretrial motions, one or more of which required pretrial hearings.

Further, the defendant's first actual assertion, after his indictment, of his right to a speedy trial occurred on May 29, 1984, when he filed his motion. Thus, the defendant did not express his concern over his right to a speedy trial until approximately two (2) months before trial. As noted by the Supreme Court in *Barker v. Wingo, supra,* delay is frequently advantageous to a defendant. Further, the record is lacking anything to show that the defendant was prejudiced in any manner. His incarceration in Tennessee after his return was for the purpose of serving his murder and armed robbery sentences. The escape charge did not affect his incarceration in California because he would have been under restraint there anyway for the purpose of his ultimate return to Tennessee to serve the remainder of his murder and armed robbery sentences.

Further, the defendant does not suggest that his ability to defend the escape charge was impaired by reason of the delay.

For all of the above reasons, we find no merit to the defendant's complaint that he was denied a speedy trial.

Next, the defendant says it was error for the trial court to admit certain portions of the testimony of Mary Puckett whose testimony was based on prison records. We find no merit to this complaint.

Ms. Puckett testified that she was a records clerk with the Tennessee State Prison, that she was one of the custodians of the prison records, and that she had been working with the inmates' prison files since October, 1973. She brought with her the defendant's prison file. The file contained certified copies of the trial court's judgments showing the defendant's convictions and sentences for murder and armed robbery. These documents were described by Ms. Puckett as being the "commitment" papers by which the Department of Corrections took possession of the defendant.

Further testimony by Ms. Puckett was to the effect that the defendant's prison record file showed that he was convicted on November 30, 1970, that he was received at the penitentiary on January 18, 1971, that his earliest release parole date would have been September 6, 1982, that on November 29, 1973, an escape warrant was issued for the defendant, and that the defendant was in an escape status from November 29, 1973, until April 21, 1983.

Ms. Puckett further stated that on July 1, 1980, she was notified that the defendant had been arrested in California and that he was in custody of the penal authorities in that state. She said Officers James Mitchell and Robert Russell returned the defendant to Tennessee from California on April 21, 1983.

Other testimony by Ms. Puckett concerned the contents of a correctional officer's escape report. She testified that this report was written and signed by Correctional Officer Noah Hammock, that it was written at or near the time of the defend-

ant's escape, and that this report reflected that the defendant was assigned to a work detail and was noticed missing at approximately 11:00 a.m. on November 29, 1973.

The record shows that Officer Hammock did not testify.

The defendant, in his brief, does not challenge the admissibility of the certified copies of the trial court's judgments showing the defendant's convictions and sentences to the penitentiary. However, at trial he objected to Ms. Puckett's other testimony concerning the contents of the other records. The trial court overruled his objection, ruling that such was admissible under the Uniform Business Records as Evidence Act. T.C.A. § 24–7–111.

■ We conclude that the trial court ruled correctly. Ms. Puckett was the proper custodian of the prison records on which her testimony was based, and the entries in the records were made at or about the time of the events which were reflected in the records.

■ The defendant, in his brief, relying upon the case of *State v. Henderson*, 554 S.W.2d 117 (Tenn.1977), argues that he was denied his right of confrontation by reason of Ms. Puckett's testimony. He specifically complains about Officer Hammock's escape report and says Ms. Puckett's testimony about the contents of that report should not have been allowed as an exception to the hearsay rule under the Uniform Business Records Act. The defendant argues that her testimony to the effect that the report showed that he was missing from a work detail, served to prove one of the essential elements of the crime, i.e., that he did, in fact, escape.

In *Henderson, supra,* the Court held that the defendant was denied his right of confrontation where laboratory test results regarding the nature of a controlled substance were admitted, without the person who conducted the test being present. As we view the present matter, we are dealing with a substantially different situation.

Ms. Puckett's testimony about the defendant's prison records is analogous to the

situation dealt with in *State v. Caldwell,* 671 S.W.2d 459 (Tenn.1984). In that case our Supreme Court held that dental records made by a person who did not testify were admissible to identify the remains of a homicide victim and that the introduction of these records did not violate the confrontation clause. The Court distinguished this evidence from the laboratory report disallowed in *Henderson* on the basis that the dental records were not prepared specifically for the litigation at hand as was the toxicology report in *Henderson,* and that these records were admissible in the nature of business records. *See also State v. Wilson,* 687 S.W.2d 720 (Tenn.Cr.App.1984)— (admission of fingerprint card not prepared for specific litigation of the case was held admissible and did not deny right of confrontation.)

In the case before us, the entries in the defendant's prison records, including the report of Officer Hammock, were not prepared for the specific litigation of this case. The evidence showed the manner in which the records were kept and that the entries were routinely made contemporaneous with the events described therein. In our view, Ms. Puckett's testimony did not deny the defendant his constitutional right of confrontation.

Moreover, aside from Officer Hammock's escape report and the other portions of Ms. Puckett's testimony that are questioned by the defendant, other competent evidence clearly established that the defendant escaped. Looking at only the certified copies of the trial court's judgments, these documents show that the defendant was convicted and sentenced to the penitentiary. Officer James Mitchell testified that on or about April 21, 1983, he went to California, located the defendant in the Los Angeles County Jail, and returned him to the custody of the Tennessee authorities. Thus, this evidence showing that the defendant was in California at a time prior to the time that he would have been eligible for parole consideration from his Tennessee sentences, clearly established that he had escaped from lawful confinement in Tennessee.

■ Another complaint by the defendant is that the trial court erred in allowing evidence that he had been previously convicted of murder and armed robbery. We find no merit to this complaint.

Our Court has previously held that in escape prosecutions, it is proper to allow evidence to show an accused's prior convictions which resulted in his confinement. *State v. Smith,* 644 S.W.2d 700, 701 (Tenn. Cr.App.1982); *Lacey v. State,* 506 S.W.2d 809 (Tenn.Cr.App.1974).

In his final issue, the defendant argues that the prosecuting attorney made improper and prejudicial remarks in his closing argument to the jury.

We note that in defense counsel's argument, he stressed heavily that if the jury found the defendant guilty of escape, the jury should consider that no aggravating circumstances were present and that therefore the jury should consider its option to set a workhouse sentence of less than one (1) year.

The defendant initially complains that the prosecuting attorney should not have been permitted to argue that the defendant was a "convicted armed robber" and a "convicted murderer."

■ As we have held in this opinion, the State was authorized to prove the crimes that the defendant had committed that had resulted in his confinement from which he escaped. Thus, since the evidence of the defendant's prior convictions was properly admitted, it was not error for the prosecuting attorney to comment on these prior convictions.

■ Next, the defendant argues that the prosecuting attorney improperly commented on the defendant's exercise of his right not to testify.

The record shows the following argument by the prosecuting attorney and the ensuing colloquy between the trial court and counsel:

GEN. MILLER: There hasn't been one single mitigating factor to show he should be allowed to serve his time in this

county. *He didn't, for instance, come in here and tell you—there is no proof in the record that his father was dying of cancer, that his wife had been injured in an automobile accident and he was going to go to the funeral.* (emphasis added)

MR. KAISER: Your Honor, I am going to object to this also. This is an improper comment on the fact the Defendant didn't testify.

THE COURT: Members of the Jury, the Defendant has a perfect right not to testify and you should not draw any inference from his not testifying at all. All right, sir.

The prosecuting attorney's remark was improper, but the trial court's curative instruction solved the problem. It is presumed that the jury complied with the trial court's instruction. *State v. Vanzant,* 659 S.W.2d 816 (Tenn.Cr.App.1983); *Frazier v. State,* 566 S.W.2d 545 (Tenn.Cr.App.1977).

Other remarks made by the prosecuting attorney, to which the defendant objected, had to do with the issue of whether the defendant should be confined in the penitentiary or the workhouse. These remarks were proper as a response to the defendant's argument on the same question.

■ Further, the gist of other comments by the prosecuting attorney of which complaint is made related to his argument that the proof failed to show any excuse or justification for the defendant's escape. We construe these comments as being in the nature of arguments that the State's proof is uncontradicted or that the State's proof on a certain point is unrefuted. Our Courts have held that arguments of this type are not improper comments on the defendant's exercise of his right not to testify. *Schweizer v. State,* 217 Tenn. 569, 399 S.W.2d 743 (1966); *State v. Rice,* 638 S.W.2d 424, 427 (Tenn.Cr.App.1982); *Wright v. State,* 512 S.W.2d 650 (Tenn.Cr. App.1974).

We find nothing in the arguments of the prosecuting attorney that would rise to the level of reversible error. We conclude that none of the prosecuting attorney's comments resulted in any prejudice to the defendant.

The judgment of the trial court is affirmed.

O'BRIEN, J., and JOHN D. TEMPLETON, Special Judge, concur.