IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs September 25, 2001

## STATE OF TENNESSEE v. STEVE BARBER, a.k.a. VERNON S. BARBER

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S42,091     Phyllis H. Miller, Judge**

---

**No. E2001-00909-CCA-R3-CD**
**October 16, 2001**

---

The defendant was convicted by a Sullivan County Criminal Court jury of driving under the influence, third offense, a Class A misdemeanor, and driving while license suspended, revoked, or cancelled, third offense, a Class B misdemeanor. On appeal to this court, he argues, *inter alia*, that the trial court erred in denying his request for a mistrial and in admitting expert testimony on breath alcohol testing devices. After a careful review of the record, we affirm the judgment of the trial court. However, we remand for entry of corrected judgment forms to reflect that the defendant's convictions resulted from jury verdicts, rather than guilty pleas.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Cary Taylor, Kingsport, Tennessee (at trial); Stephen M. Wallace, District Public Defender; and William A. Kennedy, Assistant Public Defender (on appeal), for the appellant, Steve Barber.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Teresa Murray-Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Steve Barber, appeals his convictions for driving under the influence, third offense, and driving while license revoked, third offense. He was sentenced to eleven months, twenty-nine days with a $7500 fine for the driving under the influence conviction, and nine months with a $2500 fine for the driving while license revoked conviction, with the sentences ordered to run consecutively, for an effective sentence of twenty months and twenty-nine days and fines totaling $10,000. The trial court suspended all but 120 days of the driving under the influence sentence, and all but forty-five days of the driving while license revoked sentence, and ordered that the defendant

serve the remainder of his time on supervised probation. Following the denial of his motion for a new trial, the defendant filed a timely appeal to this court, presenting the following as issues for review:

I.  That the jury verdict was contrary to the law and the evidence;

II.  That the evidence in the record is insufficient as a matter of law to sustain the convictions;

III.  That the evidence at trial preponderates against the guilt of the defendant and in favor of his innocence;

IV.  That the Trial Court erred by not allowing the defendant a continuance prior to trial based upon the unavailability of two witnesses the defense deemed crucial;

V.  That the Trial Court erred by not declaring a mistrial or granting a new trial after allowing testimony concerning breathalyzer results that were ruled inadmissible by the Trial Court during the trial;

VI.  That the Trial Court erred by allowing testimony by an expert on breath alcohol testing devices; and

VII.  That the defendant received ineffective assistance of counsel; specifically, defense counsel failed to move for an in limine motion to exclude the results of defendant's breathalyzer test which was subsequently ruled inadmissible.

After a careful review of the record, we conclude that the evidence was sufficient to support the defendant's conviction of driving under the influence, and that no error occurred in the trial court's rulings. We further conclude that the defendant failed to show that he was denied the effective assistance of trial counsel. Accordingly, we affirm the judgment of the trial court.

**DISCUSSION**

At approximately 1:00 a.m. on March 15, 1998, a Tennessee Highway Patrol Officer patrolling Interstate 81 in Sullivan County came upon a 1989 Mazda stopped in the emergency lane with its headlights on and its engine running. The defendant, the owner of the vehicle, was reclined in the driver's seat. Upon being roused, he exhibited bloodshot eyes, slurred speech, and an unsteady gait. He also smelled of alcohol and admitted that he had been drinking. After failing field sobriety tests, he was arrested and subsequently charged with driving under the influence; driving

under the influence, third offense; driving on a revoked license; and driving on a revoked license, third offense.

Trooper Patricia Maines Riggs, the highway patrol officer who arrested the defendant, testified at his May 24-25, 1999, trial that she had been with the Tennessee Highway Patrol since 1984. She said that she was driving southbound on the interstate in Sullivan County at approximately 1:00 a.m. on March 15, 1998, when she observed the defendant's vehicle stopped in the emergency lane of northbound traffic. After driving approximately three miles to the next exit to turn around, she drove back to the location where she had seen the defendant's vehicle. When she arrived, she found the car in the same position, with its headlights on and engine running, but without any emergency flashers or flares. The defendant, whom Trooper Riggs identified in court, was reclined in the driver's seat, and appeared to be either asleep or sick. There was no sign of any other occupant.

The defendant was not alert, and Trooper Riggs had to tap several times on his window in order to rouse him. When awakened and asked what was wrong, he answered that he was tired. He told her that he did not have his driver's license with him; after checking with her dispatcher, Trooper Riggs learned that his license had been revoked. She said that because his speech was slurred and she detected a "strong odor of an alcoholic beverage," she asked him to step outside. Outside the vehicle, the defendant told her that he had become tired and sleepy, and had pulled to the shoulder "to rest, to sleep it off." He also told her that he had had a fight with his girlfriend earlier in the evening, and that he had gone out drinking.

Trooper Riggs testified that the defendant had to hold onto his car in order to walk without falling to the rear of his vehicle, where she had him attempt two field sobriety tests. He almost fell three times in his attempts to perform the "walk and turn" test, and again almost fell in his attempt to do the "finger to nose test." She ended the tests because she had to repeatedly catch him to prevent him from falling. Trooper Riggs testified that, in her opinion, based on her training and experience, the defendant was under the influence.

After placing the defendant in the rear of her patrol car, Trooper Riggs waited at the scene approximately thirty minutes for a tow truck to arrive to tow his vehicle. She then transported him to the Sullivan County Jail, arriving shortly before 2:00 a.m. to turn him over to the jailers for booking. From the time that she placed him in the rear of her patrol car until she arrived with him at the jail, the defendant continually begged her to let him go. He said nothing, however, about his car having broken down, and did not tell her that he had not been the driver.

Trooper Riggs testified that as the defendant was being searched and booked, she went upstairs and "[p]roceeded to fill out the implied consent [form] and observe him for the breathalyzer[.]" She testified regarding the operation of the intoximeter machine, its calibration standards, her training to perform the test, and the procedure of observing the subject for twenty minutes prior to the administration of the test. She then identified the written result of the defendant's test, testifying that it showed he had registered .10%, and that the test had been

administered at 2:17 a.m. On cross-examination, she testified that she began her pre-test observation of the defendant at approximately 2:00 a.m.

Jerry Maines, director of the Tennessee Bureau of Investigation ("TBI") Crime Laboratory in Knoxville, was accepted by the court as an expert in the field of breath alcohol testing devices. He testified at some length regarding the operation, calibration, and inspection of breath alcohol machines, including the "intoximeter ECIR" in use at the Sullivan County Jail. He also testified about the standard procedure of observing a subject for twenty minutes prior to administration of the test. On cross-examination, he explained that the twenty-minute observation period was a requirement of the manufacturer of the machine, as well a procedure adopted by the TBI to ensure that any alcohol in the subject's mouth had time to evaporate before administration of the test.

Following Maines's testimony, the trial court initiated a jury-out hearing in order to hear arguments from counsel regarding the admissibility of the breath alcohol test. At its conclusion, the court ruled that the breath alcohol results would be inadmissible due to the State's failure to demonstrate that the twenty-minute observation procedure had been followed. The defendant's request for a mistrial was denied. After instructing the jury to disregard the breathalyzer evidence, the court polled each juror individually to see if he or she would be able to put all evidence about the defendant's blood alcohol level out of his or her mind in deciding the case. Each answered in the affirmative.

The defendant testified that on the evening of March 14, 1998, his girlfriend at the time, Faye Nunley, drove the two of them in his 1989 Mazda MX6 coupe to the "Hog Wild" bar, where they met his girlfriend's sister and brother-in-law. According to the defendant, he drank three beers from the time that they arrived at the bar at 9:00 p.m. until their departure at 12:15 a.m. He said that they left earlier than planned because Nunley became angry when she saw him talking to another woman. Nunley's sister and brother-in-law left the bar at the same time, following in their car as he and Nunley, with Nunley again at the wheel, drove home along the interstate.

The defendant testified that as they drove home, the power steering pump on his car went out, making the front-wheel drive vehicle too difficult for Nunley, who suffers from arthritis, to steer. Nunley "drifted" the car onto the shoulder, and he told her to go with her sister and brother-in-law to the nearest exit to call his daughter-in-law. When he became cold while waiting, he moved to the driver's seat in order to depress the clutch to start the engine and turn on the heater. He then "laid all the way back in the seat" and went to sleep. In the meantime, Nunley, apparently still angry, waited until she had arrived back home in Abingdon, Virginia, before telephoning his daughter-in-law. The defendant said that he told Trooper Riggs about the trouble with his car, and that he had not been driving, but she "didn't have [any] sympathy." He said that Nunley did not appear on his behalf because she was angry at him for having married another woman in the meantime. He admitted that Nunley's sister and brother-in-law had also not appeared on his behalf either.

Bill Riggs, an appraiser at Bristol Auto Auction, testified that on August 10, 1998, he inspected a 1989 Mazda MX6 coupe that was brought in by a title loan company. His inspection

revealed that the power steering on the automobile did not work, and that it was very difficult to steer. His records did not indicate who had owned the car.

Teresa Ann Kaiser testified that she had known the defendant since she was three years old, but had not seen him for about fifteen years, when she ran into him on the evening of March 14, 1998, at the Hog Wild bar and asked him for a ride home. He told her that he did not have a driver's license but would ask the woman who brought him to give her a ride. Later in the evening, Kaiser approached the defendant again to tell him that she had found a ride with another man. When she did so, the defendant's companion, "a jealous person," grabbed his arm and said, "Let's go." Kaiser said that she and the man with whom she obtained a ride left the bar at about the same time as the defendant, around 12:15 a.m. As she was going out the door, she saw the defendant's companion open the car door to let the defendant into the passenger seat of their car, before going around and getting in on the driver's side. Kaiser acknowledged on cross-examination that she did not know where the defendant and his companion had gone after leaving the bar, and that the defendant was a close family friend.

In rebuttal, the State presented the testimony of Kenneth E. Ferslew, Ph.D., who was accepted by the court as an expert in the field of toxicology. Dr. Ferslew testified that, depending on the level of alcohol in a person's system, some effects of alcohol consumption include drowsiness, bloodshot eyes, slurring or slowing of speech, delayed reaction time, loss of coordination, and loss of balance. He opined that the drowsiness, difficulty in awakening, slurred speech, bloodshot eyes, and lack of coordination exhibited by the defendant to Trooper Riggs would not be consistent with a man of the defendant's size having consumed only three beers in a period of three and one-quarter hours.

After deliberating, the jury found the defendant guilty of DUI by physical control of a motor vehicle, and driving while license revoked. Upon being presented with the remaining counts of the indictment, as well as certified copies of his prior convictions, the jury found the defendant guilty of DUI, third offense, fixing a maximum fine of $7500, and driving on a revoked license, third offense, fixing a maximum fine of $2500.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant's first three issues relate to the sufficiency of the evidence in support of his DUI conviction.[1] He argues that without the breathalyzer results, the evidence was not sufficient to

---

[1] Although the defendant frames his second issue on appeal as "That the evidence in the record is insufficient as a matter of law to sustain the convictions," he limits himself in his brief to arguing only that the evidence was insufficient to support his DUI conviction. We conclude from our review of the record, however, that the evidence was sufficient to support his conviction for driving on a revoked license, third offense. The State introduced into evidence
(continued...)

support his conviction for DUI. The State argues that the evidence in the case was sufficient to support the jury's verdict.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt.").

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). When the credibility of the witnesses is resolved by the jury in favor of the State, the appellate court "may not reconsider the jury's credibility assessments." State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000), cert. denied, ___U.S. ___, 121 S. Ct. 2600, 150 L. Ed. 2d 757 (2001). In other words, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that might be drawn from the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The burden is on the defendant to show that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The jury in this case found the defendant guilty of driving under the influence by being in physical control of a motor vehicle, a violation of Tennessee Code Annotated Section 55-10-401(a). This statute provides, in pertinent part, that it is "unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state . . . while under the influence of any intoxicant . . . ." Tenn. Code Ann. § 55-10-401(a)(1) (1998). The essential elements of the defendant's offense, thus, were that he (1) was in physical control of the vehicle; (2) on a public road; (3) while under the influence of an intoxicant.

Viewed in the light most favorable to the State, the evidence in this case was more than sufficient to support the defendant's conviction for DUI. There was no dispute that the vehicle was on a public road. There was also no dispute that the defendant was found in the driver's seat, with the engine running and the headlights on. In State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993), our supreme court concluded that a jury is to consider the totality of the circumstances in

---

[1](...continued)

a certified document from the custodian of the records of the Tennessee Department of Safety, stating that the status of the defendant's license at the time of his arrest was "revoked." The State also introduced certified copies of the defendant's prior convictions for driving while his license was suspended, revoked, or cancelled.

determining whether a defendant is in physical control of a vehicle for the purposes of the DUI statute, including the defendant's location in the car, the position of the ignition key, whether the engine is running, and the extent to which the vehicle is capable of being driven or moved. Id. According to Trooper Riggs, the defendant said nothing, at the time of his arrest, of not having driven the vehicle to the location, or of any mechanical problems with the car. There was no sign of any other occupant. Although the defendant testified that he was in the driver's seat with the engine running only in order to turn the heater on to stay warm, the jury was entitled to disbelieve his testimony.

We explained the ambit of our DUI statutes in State v. Kain, 24 S.W.3d 816, 819 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 2000), in which the defense was that the intoxication was involuntary:

> [I]n State v. Turner, 953 S.W.2d 213, 215 (Tenn. Crim. App.1996), perm. app. denied (Tenn.1997), this court concluded that "by defining the offense of driving under the influence to encompass the mere physical control of a vehicle, the legislature clearly signaled its intention to create a crime imposing strict liability." Citing the Model Penal Code § 2.01 (1985), we held that a defendant, who, while intoxicated, seated himself behind the steering wheel of a stationary motor vehicle with the headlights turned on and the engine running, could be convicted of driving under the influence. Even though the vehicle had not moved, the defendant, by placing himself in physical control of the vehicle while he was intoxicated, committed the necessary voluntary act. Id. at 216. This court "has previously observed that there is no culpable mental state required for guilt of driving under the influence." Id. at 215.

The circumstances in this case were sufficient for the jury to conclude that the defendant was in physical control of the car, for the purposes of the DUI statute, at the time of his arrest.

There was also sufficient evidence from which the jury could conclude that the defendant was under the influence of alcohol at the time of his arrest. Trooper Riggs testified that the defendant was difficult to rouse, and that he smelled strongly of alcohol. She further testified that he was completely unable to perform two field sobriety tests, and that he admitted to having been drinking. Furthermore, his speech was slurred, his eyes were bloodshot, and he was so unsteady on his feet that he was unable to walk to the rear of his car without holding onto the vehicle for support, and Trooper Riggs had to catch him to prevent him from falling as he attempted the field sobriety tests. Her opinion, based on her many years of experience and training as a highway patrol officer, was that he was under the influence of alcohol. The State's toxicology expert, Dr. Kenneth Ferslew, described the effects that alcohol has on the central nervous system. In response to a hypothetical question, he testified that effects such as those described by Trooper Riggs would not be consistent with a man of the defendant's size having drunk only three beers in three hours.

In the light of this strong evidence of the defendant's intoxication, it was not necessary for the jury to have the results of the defendant's breathalyzer test in order to find him guilty of DUI. "[A] defendant may be convicted of DUI based on either evidence of intoxication or evidence showing that the defendant had a blood-alcohol concentration of .10% or more." State v. Everett D. Robinson, No. W1999-01348-CCA-RE-CD, 2000 WL 364844, at *4 (Tenn. Crim. App. Apr. 7, 2000) (citing Tenn. Code Ann. § 55-10-401(a)). Certified copies of the defendant's prior convictions established that he had two prior convictions for DUI. We conclude, therefore, that the evidence was sufficient to support the defendant's conviction for DUI, third offense.

## II.  Denial of Continuance

The defendant next contends that the trial court erred in denying his motion for a continuance. He argues that he needed additional time to ensure the presence of essential witnesses for his defense, and that the trial court's denial of his motion prejudiced the outcome of his case. The State argues that the defendant had sufficient time to contact his witnesses prior to trial, and that the trial court did not abuse its discretion in denying his request for a continuance.

The decision to grant or deny a request for a trial continuance rests within the sole discretion of the trial court. State v. Mann, 959 S.W.2d 503, 524 (Tenn. 1997) (citing State v. Morgan, 825 S.W.2d 113, 117 (Tenn. Crim. App. 1991). We will reverse the trial court's denial of a continuance only upon a showing that the denial was an abuse of discretion, and the defendant was prejudiced by the denial, in that there is a reasonable probability that, had the continuance been granted, the result of the proceeding would have been different. Id. (citing State v. Dykes, 803 S.W.2d 250, 257 (Tenn. Crim. App. 1990)); State v. Cazes, 875 S.W.2d 253, 261 (Tenn. 1994).

The record reveals that trial counsel did not request the continuance at issue in this case until the morning of the defendant's trial, after a pool of jurors had already been brought into the courtroom. In a bench conference outside the hearing of the jury, the defendant's trial counsel requested more time to secure the appearance of two witnesses, the defendant's ex-girlfriend, Nunley, and the appraiser from the auto auction, Bill Riggs. Trial counsel informed the court that service had been attempted on Riggs at the auto auction, but he had not been there, and counsel had learned that he would not return from vacation until the following week. Trial counsel said that he had finally obtained Nunley's address in Virginia and had her served with a subpoena the previous evening. However, she had just called his office fifteen minutes before to inform him that she would not appear in court because her attorney had told her that the subpoena was not valid across state lines. Therefore, trial counsel needed more time to obtain a proper subpoena under the Interstate Compact Act.

The trial court first observed that a number of continuances had already been granted in the case,[2] from the date that the matter had been originally set for trial, on April 28, 1998, until the present time, May 24, 1999. It further observed that the defendant had known that Nunley would be an important witness since March 15, 1998, and yet had not taken measures to locate and subpoena her until the last minute before trial. Consequently, the court denied the motion, finding that trial counsel had already had ample time to locate and secure his witnesses for trial.

We find no abuse of discretion by the trial court in this matter. As the trial court observed in its order denying the defendant's motion for a new trial, Bill Riggs did, in fact, appear to testify on the defendant's behalf at trial. With regards to Nunley, the trial court found that there was no evidence that the defendant made any timely effort to locate her in the months that the case was pending in court. A request for a trial continuance may be appropriately denied when there has been a lack of diligence or neglect on the part of the moving party. State v. Dorning, 682 S.W.2d 221, 223 (Tenn. Crim. App. 1984) (citing State v. Jefferson, 529 S.W.2d 674 (Tenn. 1975)). The defendant failed to offer any reason for his failure to locate Nunley prior to the day before trial, or to issue a proper subpoena for her appearance. The trial court, therefore, appropriately denied his motion for a continuance.

### III. Denial of Request for Mistrial

The defendant next contends that the trial court erred in denying his request for a mistrial or a new trial. Whether or not to declare a mistrial lies within the sound discretion of the trial court, and we will not disturb the court's decision absent a clear showing of abuse of discretion. State v. Land, 34 S.W.3d 516, 527 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 2000) (citations omitted). A mistrial should be declared in a criminal case only when something has occurred that would prevent an impartial verdict, thereby resulting in a miscarriage of justice if a mistrial is not declared. See id. (citing State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994)); State v. Jones, 15 S.W.3d 880, 893 (Tenn. Crim. App. 1999) (citing Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977)). "Generally, a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (quoting Arnold, 563 S.W.2d at 794). The burden to show the necessity for a mistrial falls upon the party seeking the mistrial. Land, 34 S.W.3d at 527 (citing State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996)).

The defendant argues that the extensive evidence offered on breath alcohol testing machines, which included the information that he had registered .10% on his test, prevented the jury from reaching an impartial verdict, thereby necessitating that a mistrial be declared. He asserts that the jury heard "so much testimony concerning the breath test that an impartial verdict was automatically precluded." We disagree.

---

[2] In the hearing on the defendant's motion for a new trial, the trial court noted that the case had been continued at least nine times before it was moved out of Sessions Court into Criminal Court.

Although a significant amount of testimony was offered about breath alcohol testing and breath alcohol machines, very little was offered concerning the results of the defendant's test. Furthermore, the trial court clearly instructed the jury to disregard all evidence about the defendant's breath alcohol test results, ordering it not to consider the evidence "in any way whatsoever" in reaching its verdict. Jurors may be presumed to follow the instructions issued by the trial court. See Millbrooks, 819 S.W.2d at 443; State v. Blackmon, 701 S.W.2d 228, 233 (Tenn. Crim. App. 1985). As an additional safeguard, however, the trial court individually polled each juror to ensure that he or she would be able to follow the instructions, with each answering affirmatively. Under these circumstances, there was no need for a mistrial to be declared. Accordingly, we conclude that the trial court did not abuse its discretion in denying the defendant's request for a mistrial.

### IV. Allowance of Expert Testimony

As his next issue, the defendant contends that the trial court committed prejudicial error in allowing TBI Crime Laboratory Director Jerry Maines to offer expert testimony on breath alcohol testing devices and procedures. Asserting that it had already been made clear from Trooper Riggs's testimony that the twenty-minute observation period, required by State v. Sensing, 843 S.W.2d 412, 416 (Tenn. 1992), had not been followed, he argues that the trial court should not have allowed Maines to offer his "extremely prejudicial" testimony. The State argues that the defendant waived any objection to the testimony by his failure to object at trial. The State further argues that because the trial court instructed the jury to disregard the breathalyzer evidence, no prejudice resulted to the defendant from Maines's testimony.

We agree with the State. The defendant failed to object to Maines's testimony at trial. Failure to raise a contemporaneous objection to the testimony waives the issue for appellate review. See Tenn. R. App. P. 36(a); Marsh v. State, 561 S.W.2d 767, 770 (Tenn. Crim. App. 1977). Furthermore, we have already determined that the defendant was not prejudiced by the testimony, since the trial court instructed the jury to disregard all evidence concerning the breathalyzer machines and the defendant's breath alcohol test results in making its determination of his guilt. This issue, therefore, is without merit.

### V. Ineffective Assistance of Counsel

As his final issue, the defendant contends that his trial counsel provided ineffective assistance for his failure to file a motion in limine to exclude the results of his breathalyzer test. This claim was made in the amended motion for new trial, but no evidence was presented at the hearing on the motion. In his appellate brief, the defendant argues that had trial counsel adequately investigated the matter before trial, he could have readily discovered that the twenty-minute observation period had not been followed, and therefore moved to exclude the evidence before it was presented to the jury.

To be successful on a claim of ineffective assistance of counsel, the defendant has the burden of showing both that his trial counsel was deficient in his performance, and that trial counsel's

deficient performance prejudiced the outcome of his case. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). Since the defendant must meet both prongs of the test in order to succeed on this claim, failure to show either deficient performance or resulting prejudice will result in a failure to establish his claim. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997); Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In denying the defendant's motion for a new trial, the trial court found that counsel should have investigated the breathalyzer results and filed a motion to suppress the evidence, but that the defendant had not been prejudiced by counsel's failure in that regard.

We concur, although for different reasons, that the claim of ineffective trial counsel must fail. The defendant had the burden of proving, by clear and convincing evidence, his allegations that trial counsel was ineffective. See Tenn. Code Ann. § 40-30-210(f). For this court to conclude that trial counsel was ineffective because he did not file a motion in limine, we would have to indulge in the assumption that he could have had no basis for this alleged inaction. That we cannot do. "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Not filing a motion in limine may have been a reasonable strategy of trial counsel, or it may have been an oversight. However, the defendant had the burden of demonstrating it was the latter. Since no proof was presented at the motion for new trial in this regard, it would be rank speculation for us to conclude that trial counsel was ineffective on this basis. Accordingly, this assignment is without merit.

## **CONCLUSION**

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court. However, although not raised by the parties on appeal, we note that the judgment forms in this case reflect that the defendant's convictions resulted from guilty pleas, rather than jury verdicts. Accordingly, we remand to the trial court for entry of corrected judgments.

_____
ALAN E. GLENN, JUDGE