IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 29, 2002

STATE OF TENNESSEE v. CHARLES NATHAN WADDLE

Direct Appeal from the Criminal Court for Greene County
No. 01-CR-177     James Edward Beckner, Judge

No. E2002-00688-CCA-R3-CD
May 2, 2003

A Greene County jury convicted the Defendant of aggravated burglary and theft of property. The
trial court imposed an effective sentence of six years to be served in the Tennessee Department of
Correction. On appeal, the Defendant challenges the sufficiency of the convicting evidence and the
appropriateness of the sentences imposed. He also argues that the trial court should have declared
a mistrial when evidence of other crimes by the Defendant was introduced at trial. Because we
conclude that the evidence is sufficient, the sentences are appropriate, and a mistrial was not
required, we affirm the convictions.

Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and
JOE G. RILEY, J., joined.

Douglas L. Payne, Greeneville, Tennessee, for the appellant, Charles Nathan Waddle.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney
General; C. Berkeley Bell, Jr., District Attorney General; and Cecil C. Mills, Jr., Assistant District
Attorney General, for the appellee, State of Tennessee.

OPINION

I.  FACTS

        David Fontaine, the victim of the aggravated burglary and theft of property, lived in Greene
County, Tennessee, with his adult son, Steve Fontaine. Steve Fontaine lived with David Fontaine
because Steve was seriously ill and unable to care for himself. At the time of the trial, Steve
Fontaine was deceased. In September, 2001, David Fontaine learned that certain items were missing
from his residence, including an RCA color television set, a Sony VCR, a Mitchell rod and reel, a
Shakespeare rod, a Mag Lite flashlight, a Hewlett-Packard computer, and a 15-inch color computer
monitor. Based upon David Fontaine's testimony, the total value of the missing property was

$1,910. David Fontaine testified that he had given no one permission to take any of these items from his home.

Jim Ellison, a detective with the Greene County Sheriff's Department, testified that on September 13, 2001, he went to the Fontaine residence to investigate a burglary and theft that had occurred there. The following day Detective Ellison searched the home of the Defendant and his brother, Brandon Waddle, on Wilhoit Road in Greene County. Detective Ellison found numerous items of stolen property, including the property stolen from David Fontaine's home. Detective Ellison testified that he obtained the consent of the Defendant's brother prior to searching the residence. Detective Ellison contacted David Fontaine, who retrieved the stolen items. After advising the Defendant of his Miranda rights, Detective Ellison interviewed the Defendant concerning the Fontaine burglary and theft and obtained a tape-recorded statement from the Defendant. The tape-recorded statement of the Defendant was admitted into evidence and played in court.

The Defendant, Charles Nathan Waddle, testified that he was acquainted with Steve Fontaine but that he had only known him for about three months. He claimed that Steve Fontaine owed him money for marijuana and Lortabs. The Defendant stated that Steve Fontaine proposed to repay the Defendant by allowing him to take items of personal property from the Fontaine home. According to the Defendant, Steve Fontaine assisted the Defendant in loading items of personal property into both the Defendant's car and Steve Fontaine's car, and that all of the items were then taken to the Defendant's house. The Defendant testified that he did not believe that he or Steve Fontaine was stealing these items. The Defendant reported that he intended to give the items back to Steve Fontaine when Steve Fontaine paid him the money owed. The Defendant asserted that he did not intend to steal the property or permanently deprive anyone of the property. The Defendant admitted that he had been convicted of forgery twice.

Based upon this evidence, the jury convicted the Defendant of aggravated burglary, a Class C felony, and theft of property valued over $1,000, a Class D felony. Following a sentencing hearing, the trial court sentenced the Defendant to six years for the aggravated burglary and four years for the theft of property, with the sentences to be served concurrently in the Tennessee Department of Correction.

## II. ANALYSIS

### A. Sufficiency of the Evidence

The Defendant argues that the evidence was insufficient to support his convictions. Aggravated burglary occurs when, without the effective consent of the property owner, a person enters a habitation with intent to commit a felony, theft, or assault. Tenn. Code Ann. § 39-14-403. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103. Theft of property is a Class D felony if the value of the property obtained is more than

One Thousand Dollars ($1,000), but less than Ten Thousand Dollars ($10,000). Id. § 39-14-105(a)(3). The value of the property is its fair market value at the time and place of the offense. Id. § 39-11-106(a)(36)(A)(i).

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

We conclude that sufficient evidence was presented for a rational jury to find the Defendant guilty of aggravated burglary and theft of property valued over $1,000. Certain items of personal property were missing from the victim's residence, and the same items were later recovered from the Defendant's residence. The victim testified as to the value of the missing property, which totaled $1,910. The victim testified that he, rather than his son, owned all of the items of personal property and that he had given no one permission to take the items from his home. The Defendant admitted taking the property, but stated that the son of the victim proposed that the Defendant take the property and keep it pending the payment of a debt owed to the Defendant. The jury, as they were entitled to do, obviously chose not to believe the Defendant's version of these events. The evidence was clearly sufficient to support the verdicts of the jury. This issue is without merit.

### B. Evidence of Other Crimes

The Defendant argues on appeal that a mistrial should have been declared by the trial court on two occasions during the trial when evidence of other crimes by the Defendant was introduced. Ernestine Jenkins, an employee of Mountain View Market Restaurant and Deli was the first witness called by the State. She testified that the Defendant asked her to cash a check signed by Steve P. "Fontana" in the amount of $35. Jenkins testified that she showed the check to a manager and asked

the manager about cashing the check. Jenkins reported that the manager made a phone call after seeing the check. At this point in the trial, a jury-out hearing ensued and the trial court determined that testimony about the check was not relevant to the charges for which the Defendant was on trial. Jenkins was excused prior to the jury's returning to the courtroom, and the trial court gave the following curative instruction to the jury:

> Members of the jury, I had begun to question the relevancy of the check was the reason I sent you out. Upon further looking into it, it just can't be introduced as part of this case. It's not relevant as part of this case, and you can't consider it for any purpose. You can't make any inference from it as to the guilt of the defendant, what little you heard about it. You can only try the case on the evidence that's introduced that relates to the burglary and the theft. So you must not consider any evidence about the check that you heard for any purpose.

Later during the trial, Detective Ellison testified that numerous items of stolen property were found during the search of the Defendant's home, including the property allegedly stolen by the Defendant from the Fontaine home. Some of the other allegedly stolen items were included in the photographs that were admitted into evidence and shown to the jury. However, the trial court again gave the jury a curative instruction, which was as follows:

> And, members of the jury, anything that's not in the indictment, that's in there is not for your consideration as to any stolen property. The things in the indictment, if you will remember, are the Hewlett-Packard computer, a 15-inch color monitor, an R.C.A. color T.V., Sony V.C.R., Mitchell reel, a Shakespeare rod and reel, a mag light flashlight. Those are all the things that are - - the defendant's charged with theft of, and those things and those things only.

The trial court recognized on both occasions that the evidence offered by the State was not relevant and potentially prejudicial to the Defendant. The trial court gave the jury an immediate curative instruction on each occasion. It is well settled that a jury is presumed to follow the trial court's instructions. State v. Blackmon, 701 S.W.2d 228, 233 (Tenn. Crim. App. 1985); State v. Compton, 642 S.W.2d 745, 746 (Tenn. Crim. App. 1982). In our view, neither the very brief testimony of Ernestine Jenkins nor the additional items of allegedly stolen property in the photographs constituted grounds for a mistrial. The determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Brown, 53 S.W.3d 264, 284 (Tenn. Crim. App. 2000). The burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). No abstract formula should be mechanically applied in making this determination, and all circumstances should be taken into account. State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993).

Considering the strong case against the Defendant and the curative instructions by the trial court, we conclude that the trial court did not abuse its discretion in denying a mistrial on the two occasions complained of by the Defendant. This issue is without merit.

## C. Sentencing

The Defendant contends that the trial court erred in imposing the maximum sentence for each of his two convictions. When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. Shelton, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). Because the record in this case indicates that the trial court adequately considered the enhancement and mitigating factors as well as the underlying facts, our review is de novo with a presumption of correctness.

Enhancement factors must be "appropriate for the offense" and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114.

The obvious purpose of these limitations is to exclude enhancement factors which are not relevant to the offense and those based on facts which are used to prove the offense. Facts which establish the elements of the offense charged may not also be the basis of an enhancement factor increasing punishment. The legislature, in determining the ranges of punishment within the classifications of offenses, necessarily took into account the culpability inherent in each offense.

State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

In sentencing the Defendant, the trial court applied two enhancement factors: (1) "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," Tenn. Code Ann. § 40-35-114(1), and (8)[1] "[t]he defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," id. § 40-35-114(8). In applying enhancement factor (1), the trial court described that factor as "very weighty. It carries a great deal of weight." The application of enhancement factor (8) is amply supported by the record, which indicates that the Defendant was revoked from alternative sentences on two prior occasions and had twice committed criminal offenses while on probation.

The trial court applied mitigating factor (1), that "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury." See id. § 40-35-113(1). Finding no other mitigating factors, the trial court then ordered maximum but concurrent sentences for each of the two offenses.

On appeal, the Defendant argues that the trial court should have applied as an additional mitigating factor the fact that the Defendant had assisted authorities in recovering the stolen property. Id. § 40-35-113(10). The State argues that "it is unclear from the record that any assistance was ever given." We agree with the State. Based upon our careful review of the record, we find no error in the trial court's decision not to apply this particular mitigating factor.

Finally, the Defendant asserts that the trial court considered an improper enhancement factor in determining his sentence. Specifically, the Defendant alleges that the trial court relied upon the

---

[1]We note that in 2002, the list of statutory enhancement factors to be used in sentencing was amended. See Tenn. Code Ann. § 40-35-114 (Supp. 2002). Therefore, the enhancement factor numbers used by the trial court in sentencing the Defendant differ from those now in use. However, the substance of the enhancement factors applied in this case was not changed by the 2002 amendment.

Defendant's lack of potential for rehabilitation as an enhancement factor. A careful review of the record reveals that the trial court was properly considering Tennessee Code Annotated § 40-35-103(5), which sets forth as a sentencing consideration the potential or lack of potential for the rehabilitation or treatment of the Defendant as a consideration in determining the sentence alternative or length of a term to be imposed. The trial court determined that the Defendant in this case lacks the potential for rehabilitation. The record supports this finding. This issue is without merit. In our view, the trial court followed proper sentencing procedures and imposed lawful sentences after considering the factors and sentencing principles.

Accordingly, we AFFIRM the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE